UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TRACEY ROAD EQUIPMENT, INC.,

                          Plaintiff,

         -against-                                      5:18-CV-0011 (LEK/ATB)

ALLY FINANCIAL, INC.,

                          Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        This action, commenced in state court by Plaintiff Tracey Road Equipment, Inc. on

November 30, 2017, was removed to federal court on January 2, 2018. Dkt. Nos. 1 ("Removal

Notice"), 1-1 at 6–14 ("Complaint").[1] Plaintiff alleges negligence and breach of fiduciary duty

claims against Defendant Ally Financial, Inc., Plaintiff's insurance broker, in connection with

Defendant's failure to advise Plaintiff to acquire credit card fraud insurance. Compl. Defendant

moves to dismiss the Complaint. Dkt. Nos. 9 ("Motion"), 9-1 ("Memorandum"). For the

following reasons, Defendant's Motion is granted.

## II.   BACKGROUND

### A.  Factual History

        The facts in this section are drawn from the Complaint. Plaintiff "is a heavy-duty truck

and construction equipment dealership that sells and rents new and used trucks and equipment."

Compl. ¶ 5. Defendant is, in relevant part, an insurance broker. Id. ¶ 6. Plaintiff used Defendant

_____

[1] The cited page numbers for this document refer to those generated by the court's
electronic filing system ("ECF").

"as its exclusive insurance broker" from 1997 to 2016. Id. ¶¶ 7–8. Plaintiff "entrusted

[Defendant] to identify, select, and procure a variety of insurance policies for [Plaintiff]." Id. ¶ 8.

At annual meetings, Defendant's representatives would "review[] the adequacy of [Plaintiff's]

then-current insurance coverage and . . . advise [Plaintiff] regarding appropriate coverage for the

forthcoming year, including but not limited to any appropriate or necessary changes required in

[its] insurance coverage." Id. ¶ 9. As their relationship progressed, Defendant became more

familiar with Plaintiff's "business and its business practices." Id. ¶ 11. Plaintiff maintains, "upon

information and belief," Defendant "knew or should have known" that "a large percentage of the

sales transactions executed by [Plaintiff's] customers were made via credit card." Id. ¶ 12.

Plaintiff's and Defendant's representatives met in 2016 to evaluate Plaintiff's existing

coverage and to discuss coverage options "for the 2016–17 policy period." Id. ¶ 15. Following

this meeting, "and based upon the parties' longstanding relationship and [Defendant's] advice

and expertise," Plaintiff authorized Defendant to purchase "an inventory coverage policy written

by Ally International Insurance Company Ltd. (the 'Ally Policy'); and an omnibus policy written

by Harco National Insurance Company (the 'Harco Policy')." Id. ¶ 16. Defendant assured

Plaintiff that it "was adequately and appropriately insured," and Plaintiff understood this to mean

that one or both of the policies provided credit card fraud coverage. Id. ¶ 17.

In March 2017, when both the Ally and Harco Policies were in effect, one of Plaintiff's

customers purchased $120,371.05 worth of parts using fraudulent credit card information, and

never paid Plaintiff for the parts. Id. ¶¶ 18–19. Plaintiff filed a claim pursuant to the Harco Policy

for the credit card fraud damages, and the claim was denied. Id. ¶¶ 20–21. Subsequently, one of

Defendant's representatives informed Plaintiff "that neither the Harco Policy nor the Ally

Policy" covered losses resulting from credit card fraud. Id. ¶ 22.

### B. Procedural History

Plaintiff commenced this action in the Supreme Court of the State of New York, Onondaga County, on November 30, 2017. Removal Notice ¶ 1. Defendant removed the action to this Court on January 2, 2018. Id. ¶ 19. Plaintiff alleges negligence and breach of fiduciary duty claims in connection with Defendant's failure to advise Plaintiff to purchase credit card fraud insurance coverage or to procure the coverage on Plaintiff's behalf. Compl. ¶¶ 24–35. Defendant moved to dismiss the Complaint, Mot.; Mem., Plaintiff opposed the Motion, Dkt. No. 13 ("Response"), and Defendant filed a reply, Dkt. No. 15 ("Reply").

## III.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 55.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged

misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.    DISCUSSION

### A. Motion to Dismiss

Defendant argues that Plaintiff's negligence and breach of fiduciary duty claims both fail because Defendant did not have a duty to advise Plaintiff to purchase credit card fraud insurance or to procure credit card fraud insurance on its behalf. Mem. at 9–11. To state a negligence claim under New York law, a plaintiff must allege "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 428 (2d Cir. 2013) (quoting Akins v. Glen Falls City Sch. Dist., 424 N.E.2d 531, 535 (N.Y. 1981)). To state a breach of fiduciary duty claim under New York law, a plaintiff must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011) (citing Barrett v. Freifeld, 883 N.Y.S.2d 305, 308 (App. Div. 2009)). The duty analysis for negligence and breach of fiduciary duty claims is identical. Muller-Paisner v. TIAA, 289 F. App'x 461, 465 (2d Cir. 2008).

Generally, "insurance brokers 'have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage." Voss v. Netherlands Ins. Co., 8 N.E.3d 823, 828 (N.Y. 2014). Therefore, a plaintiff may generally allege the existence of a duty only by alleging "that it made a particular request to the broker and the requested coverage was not procured." Id. Courts have defined the duty of insurance brokers narrowly because "[i]nsurance agents or brokers are not personal financial counselors and risk

managers. . . . Insureds are in a better position to know their personal assets and abilities to protect themselves more so than general insurance agents or brokers." Murphy v. Kuhn, 682 N.E.2d 972, 976 (N.Y. 1997).

Plaintiff does not allege that Defendant failed to procure requested coverage, but states that Defendant had a duty of advisement because the parties had a "special relationship." Resp. at 6. A plaintiff may allege that it had "a special relationship" with the defendant insurance broker, and that the defendant had "an additional duty of advisement," if any of the following "three exceptional situations" exist:

> (1) the agent receives compensation for consultation apart from the payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

Voss, 8 N.E.3d at 828 (quoting Murphy, 682 N.E.2d at 975–76).

Plaintiff does not state which of these three situations form the basis of its argument. However, Plaintiff clearly does not allege that it paid Defendant for consulting work. Plaintiff analogizes to Voss, Resp. at 6–7, where the New York Court of Appeals found that the client had successfully alleged the existence of a special relationship under the second "exceptional situation." Voss, 8 N.E.3d at 829. In Voss, the parties allegedly "discussed business interruption coverage," the broker recommended a $75,000 business interruption coverage limit, the client "questioned that amount," and the broker "assured her that it was adequate." Id. The court held that the client had successfully alleged the existence of a special relationship by alleging that the parties actually discussed the relevant coverage issue. Id.

Plaintiff's reliance on <u>Voss</u> is unavailing because Plaintiff does not allege ever discussing credit card fraud coverage with Defendant. Plaintiff alleges that it "reasonably and justifiably believed . . . that [Defendant's] assurance that [it] was adequately and appropriately insured meant that [it] was insured . . . against damages resulting from credit card fraud." Compl. ¶ 17. However, a general conversation about "adequate" insurance—regardless of what Plaintiff believed—was not a request for credit card fraud insurance and did not impose upon Defendant a duty of advisement. <u>See</u> <u>A&B Furniture, Inc. v. Pitrock Realty Corp.</u>, No. 36146/04, 2007 WL 2429707, at *10 (N.Y. Sup. Ct. July 19, 2007) (internal citations omitted) ("It has been uniformly held that . . . a general request for insurance coverage is insufficient to constitute a specific request for coverage. Even a request for a 'top of the line' policy and to be 'fully covered' does not trigger any duty by the insurance broker to recommend or obtain a particular type of coverage not specifically requested by the plaintiff."); <u>Holborn Corp. v. Sawgrass Mut. Ins. Co.</u>, No. 16-CV-9147, 2018 WL 485975, at *9 (S.D.N.Y. Jan. 17, 2018) ("An alleged conversation in which the parties discussed 'the most advantageous' policy—without either party specifically mentioning [the relevant insurance coverage]—is insufficient to create a special relationship.").

Although Plaintiff does not use these words, it appears to argue that it had a special relationship with Defendant based on the "course of dealing" exception. Resp. at 5, 7–8. Essentially, Plaintiff argues that Defendant had a duty of advisement because of the length of their relationship and because Defendant was familiar with Plaintiff's business needs, including the fact that Plaintiff processed a large number of credit card transactions. Compl. ¶¶ 11–13, 25, 31.

New York courts analyzing the "course of dealing" exception to the typically limited duty of an insurance broker are more likely to find that such a course of dealing exists where the insurance broker and client have a longstanding relationship, the client is relatively unsophisticated, and the broker exercises significant decision-making control over the procurement of insurance. For instance, in <u>Finch v. Steve Cardell Agency</u>, the client—a rodeo host—relied on an insurance broker to procure rodeo insurance policies for "at least six years." 25 N.Y.S.3d 441, 443 (App. Div. 2016). The client testified that he "knew little about insurance," never reviewed any of the insurance policies that the broker procured, and "insurance certificates were the only documents ever provided to him." <u>Id.</u> Based on this testimony, the Court held that a triable issue of fact existed regarding whether the client and broker had a special relationship. <u>Id.</u> Similarly, in <u>South Bay Cardiovascular Association, P.C. v. SCS Agency, Inc.</u>, the client and broker had a five-year long relationship, and the client's employee responsible for finding insurance coverage never read the insurance policies that the broker procured. 963 N.Y.S.2d 688, 691 (App. Div. 2013). In fact, the broker told the employee that it "did not expect her to read the insurance policies." <u>Id.</u> Based on this evidence, the Court held that a triable issue of fact remained regarding whether the parties had a special relationship. <u>Id.</u> <u>Cf.</u> <u>Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.</u>, 851 N.E.2d 1149, 1152 (N.Y. 2006) (stating that no special relationship existed where the client was "a sophisticated commercial entity" and did not "delegate its insurance decision-making responsibility to" the insurance broker).

Moreover, courts have found that the course of dealing exception applies where the insurance broker performs services for the client over a long period of time that go beyond services provided in an ordinary broker-client relationship. In <u>Hudson Heritage Federal Credit Union v. CUMIS Insurance Society, Inc.</u>, the client alleged that it had a seventy-five year-long

relationship with its insurance broker, the broker frequently provided "insurance guidance" and "risk analysis," the parties "engaged in periodic risk assessment meetings," and the client "utilized [the broker's] exclusive risk management services to avoid . . . emerging and ever-changing risks." No. 17-CV-2930, 2018 WL 557900, at *4 (S.D.N.Y. Jan. 22, 2018). The court held that these allegations were sufficient to allege the existence of a special relationship under the course of dealing exception. Id. at *4.

By contrast, courts have rejected course of dealing claims where the claim is premised solely on the existence of a long-standing relationship between the client and insurance broker. See, e.g., Scotto Princeton, LLC v. Felsen Assocs., Inc., 807 N.Y.S.2d 546, 549 (2005). Moreover, courts have emphasized that "[a]ll insurance customers are seeking the most advantageous insurance policy, and as a result, a discussion generally about what policy will be the most advantageous does not suggest 'that the [p]laintiff enjoyed anything other than an ordinary consumer-agent insurance relationship.'" Holborn, 2018 WL 485975, at *9.

The Court concludes that Plaintiff has not alleged the existence of a special relationship with Defendant based on the course of dealings exception. Plaintiff, unlike the clients in Finch and South Bay, does not allege that it knew little about insurance or delegated the entirety of its insurance decision-making to Defendant. To the contrary, Defendant informed Plaintiff of "appropriate or necessary changes" to its insurance policy every year, and Defendant did not procure policies without receiving Plaintiff's permission. Compl. ¶¶ 9, 16. See Hoffend & Sons, Inc. v. Rose & Kiernan, Inc., 851 N.E.2d 1149, 1152 (N.Y. 2006) (stating that no special relationship existed where the client was "a sophisticated commercial entity" and did not "delegate its insurance decision-making responsibility to" the insurance broker). Moreover, Plaintiff's description of the parties' annual meetings provides no basis for the Court to infer that

8

they "enjoyed anything other than an ordinary consumer-agent insurance relationship." Holborn, 2018 WL 485975, at *9. Plaintiff alleges only that, at its annual meetings with Defendant, Defendant reviewed Plaintiff's existing coverage and made recommendations for future coverage. Compl. ¶ 9. This describes the role of most, if not all, insurance brokers. If the Court allowed these bare allegations to create a duty of advisement, the course of dealing exception would swallow the rule.

Plaintiff makes much of the allegation that it relied on Defendant "as its exclusive insurance broker" from 1997 to 2016. Resp. at 7. However, as stated above, an allegation of a longstanding relationship, without more, is insufficient to establish the course of dealing exception. Scotto Princeton, LLC, 807 N.Y.S.2d at 549; see also Moutafis Motors, Ltd. v. MRW Grp., Inc., 41 N.Y.S.3d 740, 741 (App. Div. 2016) ("Although the plaintiff had a course of dealing with the defendant for approximately 11 years, a lengthy relationship is not enough to demonstrate a special relationship."). Plaintiff asserts that, because of the length of their relationship, Defendant had a "heightened level of familiarity" with Plaintiff's business practices. Resp. at 8. However, most insurance brokers presumably research a client's unique needs and develop a "heightened level of familiarity" with the client's business practices before making an educated coverage recommendation. Therefore, this allegation fails to distinguish Plaintiff and Defendant's relationship from an ordinary broker-client relationship. See Gaidon v. Guardian Life Ins. Co. of Am., 679 N.Y.S.2d 611, 612 (App. Div. 1998) (holding that the "defendant's superior knowledge . . . acquired as a result of its experience in selling insurance, does not create" a fiduciary obligation).

Because Plaintiff has failed to allege any facts suggesting that it had a special relationship

with Defendant, it fails to state a claim for negligence or breach of fiduciary duty. Accordingly, the Court grants Defendant's Motion.

### B. Leave to Amend

In a footnote in its Response, Plaintiff "request[ed] permission to file a first Amended Complaint to provide additional details regarding the parties' relationship" in the event that the Court dismisses the Complaint. Resp. at 11 n.4. Defendant's Reply did not address this request. Rule 15 of the Federal Rules of Civil Procedure provides that, after a party has "amend[ed] its pleading once as a matter of course," it may do so again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The Court should allow leave to amend "[i]n the absence of . . . undue delay . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." Rusyniak v. Gensini, 629 F. Supp. 2d 203, 212 (N.D.N.Y. 2009) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Allowing amendment of a pleading is "futile" if the pleading as amended could not survive a motion to dismiss. Id. "Furthermore, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied." Jones v. County of Suffolk, 236 F. Supp. 3d 688, 702 (E.D.N.Y. 2017).

The Court does not see a reason to deny leave to amend. Plaintiff has not yet had an opportunity to amend its pleading, there has been no undue delay, and the Court is unaware of any undue prejudice that Defendant would suffer if Plaintiff is permitted to amend. Moreover, Plaintiff claims that it can provide more allegations detailing its relationship with Defendant. Resp. at 11 n.4. While it is puzzling that those facts did not make it into the initial pleading, the Court cannot say, at this time, that allowing Plaintiff an opportunity to add additional factual

detail would be futile. Therefore, the Court dismisses the Complaint, but grants Plaintiff leave to file an amended complaint.

Plaintiff has thirty days from the filing date of this Memorandum-Decision and Order to file an amended complaint. The amended complaint, which shall supersede and replace in its entirety the original Complaint, must be a complete pleading which sets forth all of the claims that Plaintiff wants this Court to consider as a basis for awarding relief.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to dismiss (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1-1 at 6–14) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiff may file an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and the Local Rules within thirty days of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if Plaintiff fails to file an amended complaint within thirty days of the filing date of this Memorandum-Decision and Order, this action will be dismissed without further order from the Court; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 29, 2018
           Albany, New York

Lawrence E. Kahn
U.S. District Judge